Eastern District of Kentucky
F I L E D
AUG 17 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-335-GWU

DRUCILLA COX,                                                            PLAINTIFF,

VS:                               MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,              DEFENDANT,

## INTRODUCTION

Drucilla Cox brought this action to obtain judicial review of an unfavorable administrative decision on her application for Supplemental Security Income. The case is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes,

1

the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742

2

F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

3

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range

4

of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Cox, a 47 year-old former folding machine operator and cotton tagger[1] with a "limited" education, suffered from impairments related to a history of cerebrovascular disease (stroke), anxiety, depression and poor vision. (Tr. 13, 15, 187). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of medium level work. (Tr. 19). Since the claimant would still be able to return to her past work as a cotton tagger as well as perform a significant number of other jobs, she could not be considered totally disabled. (Tr. 20).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

In determining that Cox could return to her past relevant work, the ALJ

---

[1] The vocational expert stated that the Dictionary of Occupational Titles referred to this position as cotton sampler. (Tr. 187).

5

relied heavily upon the testimony of Vocational Expert Katherine Bradford. The hypothetical question initially presented to Bradford included an exertional limitation to light level work along with such non-exertional limitations as (1) an inability to sit, stand or walk for more than six hours a day each with rests; (2) an inability to frequently carry more than 10 pounds; (3) an inability to more than occasionally bend, squat, or climb; (4) an inability to perform work requiring exposure to unprotected heights; and (5) a "moderate" limitation of ability to work around moving machinery and driving automobiles. The ALJ also indicated that the hypothetical person would have significant vision loss in the right eye, would not have full bilateral visual acuity, could not see in stereo and would lack depth perception. (Tr. 187-188). In response, the witness indicated that Cox's past cotton tagging work could still be performed and she also identified a significant number of other jobs in the economy which could still be done. (Tr. 188-189). The ALJ then presented a second hypothetical question including the previously-cited physical restrictions along with such mental limitations as a limitation to jobs requiring one to understand and recall only simple material or maintain the mental effort to complete routine tasks in an object-focused setting and handle only routine changes in routine situations. (Tr. 190). The witness indicated that these additional mental limitations would only slightly reduce the available job base.[2] (Tr. 190). Therefore, assuming that the vocational factors considered by Bradford fairly depicted the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned can find no error. The hypothetical question included

---

[2] The position of cashier would be eliminated. (Tr. 190). The other cited positions would remain available. (Tr. 190).

all of the physical restrictions identified by Dr. Mark Vollenweider, an examining consultant. (Tr. 120). Dr. Stuart Eads, an examining eye specialist, noted Cox's limited stereopsis due to the loss of vision on the right side and reported that this would restrict her ability to perform work activities. (Tr. 88). These restrictions were also presented to the vocational expert. The plaintiff's treating sources at Appalachian Regional Healthcare (Tr. 93-109) and Dr. Abdulkader Dahhan (Tr. 125-127) did not report the existence of more severe physical restrictions than those found by the ALJ. Therefore, substantial evidence supports this portion of the administrative decision.

Cox asserts that the ALJ erred by rejecting the opinion of Dr. Eads and relying instead upon that of Dr. Hughes Helm, whose report should have been stricken from the record due to Dr. Helm's license problems. However, this is simply not the case. The ALJ clearly presented Dr. Eads' physical restrictions to the vocational expert and did not rely upon Dr. Helm. Therefore, the plaintiff's argument is without merit.

Cox argues that the ALJ erred in failing to include any mental restrictions in his residual functional capacity finding. (Tr. 19). However, as previously noted, the ALJ did present mental restrictions to Bradford as part of an alternative hypothetical question and the expert indicated that most of the jobs she had previously identified could still be performed. (Tr. 190). The claimant's treating source at the Cumberland River Comprehensive Care Center did not identify the existence of more severe mental restrictions than those presented to the vocational expert. (Tr. 128-146). Therefore, any error on the part of the ALJ in omitting these limitations from his findings would appear harmless.

Cox asserts that the ALJ erred in failing to consider whether the combination of her impairments were equivalent to Section 2.04 of the Listing of

Impairments concerning loss of visual efficiency. To meet this Listing requires one to show that:

> The visual efficiency of the better eye after best correction is 20 percent or less. (The percent of remaining visual efficiency is equal to the product of the percent of the remaining visual acuity efficiency and the percent of remaining visual field efficiency).

20 C.F.R. Part 404, Subpart P, App. 1, Section 2.04. The plaintiff asserts that the best corrected visual acuity in her better left eye is 20/60 based upon Dr. Eads' examination (Tr. 88) for a percentage of 33 percent and that the percentage of her visual efficiency is 82 percent.[3] When these are multiplied together, this results in a 27 percent visual efficiency rating, very close to that required to meet the Listing and, so, the ALJ should have addressed the issue concerning whether this Listing was equaled.

The defendant argues that Cox has not accurately calculated the visual efficiency rating. The defendant notes that 20 C.F.R. Part 404, Subpart P, App. 1, Section 2.00(A)(2) states that to meet the Listing at 2.04 "only the remaining visual acuity for distance of the better eye with correction based on the Snellen test chart measurement may be used." This chart is included in the Listings at Table No. 1. It indicates that the proper percentage for one with a 20/64 visual acuity (the chart's closest approximation to 20/60) would be 65 percent. When this number is multiplied by the 82 percent visual efficiency rating,[4] the product is

---

[3] The administrative regulations state that the visual field efficiency percentage is obtained by adding the number of degrees of the eight principle meridians of the contracted field and dividing by 500. 20 C.F.R. Chapter III, Table No. 2, Section 2. The plaintiff asserts that the sum of the principle meridian degrees is 410 and when divided by 500 would equal 82 percent. The defendant has looked at Dr. Ead's chart at page 90 of the transcript and calculated the sum to be 420 for a percentage of 84 percent. This latter figure appears to be correct.

[4] An even higher rating of 55 percent is obtained if the 84 percent is used instead of 82 percent.

8

53 percent, a percentage far above that required to meet the Listing. Thus, no issue of equivalence is presented. Furthermore, the defendant notes that no physician of record indicated that the Listing was met. The undersigned agrees with the defendant's argument and rejects that of the plaintiff.

Finally, Cox argues that the ALJ erred in rejecting her subjective complaints relating to her visual impairment such as her description of difficulty sustaining visual acuity for prolonged periods. Subjective complaints are to be evaluated under the standards announced in Duncan v. Secretary of Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. The opinion of Dr. Eads does not support such restrictions. Therefore, the Court rejects the claimant's argument.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the __17__ day of August, 2005.

G. WIX UNTHANK
SENIOR JUDGE

9